UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION - LEXINGTON

BASCUM STACY,

    Plaintiff,

v.                                                CASE NO.:

ALLY FINANCIAL, INC.,

    Defendant.

_____/

## **COMPLAINT**

    COMES NOW, Plaintiff, BASCUM STACY, by and through the undersigned counsel, and sues Defendant, ALLY FINANCIAL, INC, and in support thereof respectfully alleges violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA").

## **INTRODUCTION**

    1.    The TCPA was enacted to prevent companies like ALLY FINANCIAL INC from invading American citizen's privacy and to prevent abusive "robo-calls."

    2.    "The TCPA is designed to protect individual consumers from receiving intrusive and unwanted telephone calls." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012).

    3.    "Senator Hollings, the TCPA's sponsor, described these calls as 'the scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall." 137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242, 1256 (11th Cir. 2014).

4.      According to the Federal Communications Commission (FCC), "Unwanted calls and texts are the number one complaint to the FCC. There are thousands of complaints to the FCC every month on both telemarketing and robocalls. The FCC received more than 215,000 TCPA complaints in 2014." *Fact Sheet: Wheeler Proposal to Protect and Empower Consumers Against Unwanted Robocalls, Texts to Wireless Phones*, Federal Communications Commission, (May 27, 2015).

## JURISDICTION AND VENUE

5.      Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. § 1331, Federal Question Jurisdiction, as this action involves violations of the TCPA.

6.      Subject matter jurisdiction, federal question jurisdiction, for purposes of this action is appropriate and conferred by 28 U.S.C. § 1331, which provides that the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States; and this action involves violations of 47 U.S.C. § 227(b)(1)(A)(iii). See *Mims v. Arrow Fin. Servs., LLC*, S.Ct. 740, 748 (2012) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1249 (11th Cir. 2014).

7.      The alleged violations described herein occurred in Woodford County, Kentucky. Accordingly, venue is appropriate with this Court under 28 U.S.C. §1391(b)(2), as it is the judicial district in which a substantial part of the events or omissions giving rise to this action occurred.

## FACTUAL ALLEGATIONS

8.      Plaintiff is a natural person, and citizen of the State of Kentucky, residing in Woodford County, Kentucky.

9. Plaintiff is the "called party." See *Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014).

10. Defendant, ALLY FINANCIAL, INC., is a corporation which was formed in Delaware with its principal place of business located at 500 Woodward Avenue, 10th Floor, Detroit, Michigan 48226 and which conducts business in the State of Kentucky through its registered agent, CT Corporation System 306 West Main Street, Suite 512, Frankfort, Kentucky 40601.

11. ALLY FINANCIAL INC called Plaintiff over one thousand (1,000) times beginning around June 2014, in an attempt to collect a debt.

12. Upon information and belief, some or all of the calls ALLY FINANCIAL, INC. made to Plaintiff's cellular telephone number were made using an "automatic telephone dialing system" which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator (including but not limited to a predictive dialer) or an artificial or prerecorded voice; and to dial such numbers as specified by 47 U.S.C § 227(a)(1) (hereinafter "autodialer calls"). Plaintiff will testify that his knew it was an autodialer because of the vast number of calls he received and because he heard a pause when he answered his phone before a voice came on the line.

13. Plaintiff is the subscriber, regular user and carrier of the cellular telephone number (859) ***-0720, and was the called party and recipient of Defendant's calls.

14. Beginning on or about June 2014, ALLY FINANCIAL, INC began bombarding Plaintiff's cellular telephone (859) ***-0720 in an attempt to collect on a car loan.

15. Plaintiff's wife passed away on June 10, 2015.

16. After Plaintiff's wife passed away, ALLY FINANCIAL, INC., continued placing auto-dialer calls to Plaintiff's cellular telephone asking to speak with Plaintiff's deceased wife.

17. On or around August 2014, Plaintiff first revoked his consent to be called by ALLY FINANCIAL, INC. by requesting that the calls stop. Specifically stating "please stop calling, you're calling for my wife who passed away." Each call ALLY FINANCIAL, INC. made to Plaintiff's cell phone after said revocation was done so without the "expressed permission" of the Plaintiff and in violation of the TCPA.

18. Additionally, on several occasions Plaintiff sent a note along with his payment requesting that the calls stop.

19. In addition to the unwanted and unauthorized phone calls from ALLY FINANCIAL, INC., Plaintiff also began to receive text messages from the Defendant, ALLY FINANCIAL, INC.

20. Despite Plaintiff informing Defendant to stop calling, the Defendant's autodialer calls and text messages to Plaintiff's cellular phone continued after August, 2014. Between October 8, 2016 to October 25, 2016, Plaintiff made a non-exclusive log of thirty-two (32) calls and one (1) text he received from the Defendant. Due to the volume and time period over which Plaintiff received automated calls and text messages, Plaintiff was not able to properly catalogue each and every call or text message from Defendant, however attached hereto as Exhibit A is a small sampling.

21. On December 24, 2016 (Christmas Eve), the Plaintiff was in the middle of prayer for his deceased wife when the Defendant yet again began bombarding his cellular phone with automated calls, causing him to become severely distraught.

22. Defendant's relentless auto-dialer calls to Plaintiff's cellular phone seeking to speak with his deceased wife has caused Plaintiff to become depressed and to suffer from anxiety each time his phone rings. Plaintiff is considering seeking professional help with regard to his depression and anxiety.

23. Plaintiff estimates approximately one thousand (1,000) calls to his cell phone post-revocation.

24. The autodialer calls from Defendant came from telephone numbers including but not limited to (855) 306-6998 and (855) 856-2559 and when these numbers are called a pre-recorded voice or agent answers and identifies the numbers as belonging to ALLY FINANCIAL, INC.

25. Defendant knowingly and/or willfully harassed and abused Plaintiff on numerous occasions by calling Plaintiff's cellular telephone number up to three (3) times a day from approximately June 2014 through the filing of this complaint, with such frequency as can reasonably be expected to harass, all in an effort related to collection of the subject account.

26. ALLY FINANCIAL, INC. has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice to individuals just as they did to Plaintiff's cellular telephone in this case.

27. ALLY FINANCIAL, INC. has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice, just as they did to the Plaintiff's cellular telephone in this case, with no way for the consumer, or ALLY FINANCIAL, INC., to remove the number.

28. ALLY FINANCIAL, INC.'s corporate policy is structured so as to continue to call individuals like Plaintiff, despite these individuals explaining to ALLY FINANCIAL, INC. they do not wish to be called.

29. ALLY FINANCIAL, INC. has numerous other federal lawsuits pending against them alleging similar violations as stated in this Complaint.

30. ALLY FINANCIAL, INC. has numerous complaints against it across the country asserting that its automatic telephone dialing system continues to call despite being requested to stop.

31. ALLY FINANCIAL, INC. has had numerous complaints against it from consumers across the country asking to not be called, however Defendant continues to call these individuals.

32. ALLY FINANCIAL, INC.'s corporate policy provided no means for Plaintiff to have Plaintiff's number removed from ALLY FINANCIAL, INC. call list.

33. ALLY FINANCIAL, INC. has a corporate policy to harass and abuse individuals despite actual knowledge the called parties do not wish to be called.

34. Not one of ALLY FINANCIAL, INC.'s telephone calls placed to Plaintiff were for "emergency purposes" as specified in 47 U.S.C. § 227(b)(1)(A).

35. ALLY FINANCIAL, INC. willfully and/or knowingly violated the TCPA with respect to Plaintiff.

36. From each and every call placed without express consent by ALLY FINANCIAL, INC. to Plaintiff's cell phone, Plaintiff suffered the injury of invasion of privacy and the intrusion upon his right of seclusion.

37. From each and every call without express consent placed by ALLY FINANCIAL, INC. to Plaintiff's cell phone, Plaintiff suffered the injury of the occupation of her cellular telephone line and cellular phone by unwelcome calls, making the phone unavailable for legitimate callers or outgoing calls while the phone was ringing from ALLY FINANCIAL, INC. call.

38. From each and every call placed without express consent by ALLY FINANCIAL, INC. to Plaintiff's cell phone, Plaintiff suffered the injury of unnecessary expenditure of his time. For calls he answered, the time she spent on the call was unnecessary as he repeatedly asked for the calls to stop. Even for unanswered calls, Plaintiff had to waste time to unlock the phone and deal with missed call notifications and call logs that reflect the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular phone, which are designed to inform the user of important missed communications.

39. Each and every call placed without express consent by ALLY FINANCIAL, INC. to Plaintiff's cell phone was an injury in the form of a nuisance and annoyance to the Plaintiff. For calls that were answered, Plaintiff had to go to the unnecessary trouble of answering them. Even for unanswered calls, Plaintiff had to waste time to unlock the phone and deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular phone, which are designed to inform the user of important missed communications.

40. Each and every call placed without express consent by ALLY FINANCIAL, INC. to Plaintiff's cell phone resulted in the injury of unnecessary expenditure of Plaintiff's cell phone's battery power.

41. Each and every call placed without express consent by ALLY FINANCIAL, INC. to Plaintiff's cell phone where a voice message was left which occupied space in Plaintiff's phone or network.

42. Each and every call placed without express consent by ALLY FINANCIAL, INC. to Plaintiff's cell phone resulted in the injury of a trespass to Plaintiff's chattel, namely her cellular phone and her cellular phone services.

43. As a result of the answered and unanswered calls described above, Plaintiff suffered an invasion of privacy; Plaintiff was also affected in a personal and individualized way by stress, anxiety, nervousness, embarrassment, distress and aggravation. Due to both answered and unanswered calls, Plaintiff suffered the expenditure of Plaintiff's time, exhaustion of Plaintiff's cellular telephone battery, unavailability of Plaintiff's cellular telephone while ringing, waste of Plaintiff's time, causing risk of personal injury due to distraction and trespass upon Plaintiff's chattels. All of the abovementioned were caused by, and/or directly related to, Defendant's attempts to collect a debt from the Plaintiff through the use of automated/predictive dialing technology.

## COUNT I
### (Violation of the TCPA)

44. Plaintiff fully incorporates and realleges paragraphs one (1) through forty-three (43) as if fully set forth herein.

45. ALLY FINANCIAL, INC. willfully violated the TCPA with respect to Plaintiff, specifically for each of the auto-dialer calls made to Plaintiff's cellular telephone after Plaintiff notified ALLY FINANCIAL, INC. that Plaintiff wished for the calls to stop.

46. ALLY FINANCIAL, INC. repeatedly placed non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against ALLY FINANCIAL, INC. for statutory damages, punitive damages, actual damages, treble damages, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

Respectfully submitted,

Leeann Thornhill, Esquire
Wasson & Thornhill, PLLC
3000 Breckenridge Lane
Louisville, Kentucky 40220
T: (502) 964-7878
F: (855) 257-9256
leeann@wassonthornhill.com